JAMES R. HASENYAGER (Bar No. 1404)
PETER W. SUMMERILL (Bar No. 8282)
HASENYAGER & SUMMERILL
Attorneys for Plaintiff
1004 24th Street
Ogden, UT 84401
Telephone:  (801) 621-3662
Facsimile:  (801) 392-2543

GARRETT S. HANDY (Bar No. 10725)
LAW OFFICE OF GARRETT S. HANDY
Attorney for Plaintiff
515 S. 700 E. Suite 3R
Salt Lake City, UT 84102
Telephone: (801) 264-6677
Facsimile: (801) 606-7787

<table>
<tr><td colspan="2" align="center">UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH<br>CENTRAL DIVISION</td></tr>
<tr><td>LESLIE BRYSON,<br><br>Plaintiff,<br><br>vs.<br><br>JEFFREY WESTERMAN, a Provo City Police Officer, CRAIG GESLISON, former Chief of Policy for Provo City; PROVO CITY and PROVO CITY POLICE DEPARTMENT; and, JOHN or JANE DOES 1-10;<br><br>Defendants.</td><td>Case No.<br><br><br>COMPLAINT AND JURY DEMAND<br><br><br>Judge:</td></tr>
</table>

COMES NOW Plaintiff and alleges:

INTRODUCTION, JURISDICTION AND VENUE AND LAW

Plaintiff Leslie Bryson asserts civil and constitutional rights violations by Defendants.

Specifically, Defendants violated Ms. Bryson's rights guaranteed by the Fourth and Fourteenth

Amendments to the United States Constitution, and further secured by the Civil Rights Act of

1871, 42 U.S.C. § 1983 and § 1988, and by the laws and the Constitution of the State of Utah.

Ms. Bryson seeks damages, both compensatory and punitive damages; affirmative and equitable

relief; an award of attorney's fees, costs, and interest; and other and further relief as this Court deems just and equitable.

1. Plaintiff, Leslie Bryson, is a citizen of the United States of America and a resident of Livermor, California.

2. Defendant, Jeffrey Thomas Westerman, at all relevant times was a police officer of the City of Provo, County of Utah, a municipal corporation and governmental subdivision of the State of Utah; defendant is also believed to be a resident of such city and county.

3. Defendant, Craig Geslison, at all relevant times was chief of police of the City of Provo, County of Utah, a municipal corporation and governmental subdivision of the State of Utah; defendant is also a resident of such city and county.

4. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Sixth, and Fourteenth Amendments to the Constitution of the United States (Art. IV, U.S. Constitution, Art. VI, U.S. Constitution, Amend XIV, U.S. Constitution), and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code, §§ 1983, 1988 (42 U.S.C.A. § 1983).

5. This action further arises under the statutes and Constitution of Utah. Specifically, Utah Constitution Article I, Section 1 (Inherent and Inalienable Rights), Section 7 (Due process of law), Section 14 (Unreasonable searches forbidden), Section 25 (Rights retained by people) and Section 27 (Fundamental rights) were offended, breached and flagrantly infringed upon, resulting in severe emotional distress and damages in amounts to be proved at trial.

6.  Each of the acts of defendants alleged in this complaint were done by defendants under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the State of Utah, the City of Provo, and the County of Utah, and under the authority of their office as police officers for such city and county.

7.  At all times relevant hereto, Defendant Westerman was acting as an employee and police officer under color and authority of law for the City of Provo, State of Utah.

8.  This action is brought against Westerman in his individual and official capacities. His authority to act was derived from Utah State law and/or the commands and directives of his superiors. All of Westerman's acts, as set forth in the following paragraphs, were performed under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Utah and the Provo City Police Department.

9.  Defendant Provo City is a political subdivision of the State of Utah. As part of its corporate powers, and at all times relevant herein, Provo City maintained a police department. Defendant Westerman was an officer and employee of Provo City and the Provo City Police Department.

10. This action is also brought against Provo City as a 'person' liable under 42 U.S.C. § 1983 and as may be liable under the Constitution of the State of Utah.

11. Craig Geslison is the chief of police for Provo City acting under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Utah and the Provo City Police Department at all times relevant to the events and facts in this case.

12. John and Jane Does 1-15 are identified as unnamed individuals who were employed by either Provo City or the Provo City Police Department. Plaintiff has not yet been able to

determine the exact identity of said Does, but will do so during discovery. This action is

brought against John and Jane Does 2-15 in their individual and official capacities. Their

authority to act was derived from Utah State law and/or the commands and directives of

their superiors. All of the acts of the individuals and entities listed as Defendants were

performed under color of the laws, statutes, ordinances, regulations, policies, customs,

and usages of Provo City or the Provo City Police Department, as authorized by the State

of Utah.

13.    This court has jurisdiction of this cause under Title 28 of the United States Code, § 1343

(28 U.S.C.A. § 1343) and venue under Title 28 of the United States Code § 1391.

## Factual Allegations

14.    On or about July 23, 2010, Ms. Bryson was the victim of a traffic accident.

15.    Officer Westerman was the responding officer.

16.    After completing his investigation of the collision, Officer Westerman released the other

driver and turned his attention to the victim of the collision, Ms. Bryson.

17.    Officer Westerman had Ms. Bryson perform field sobriety tests.

18.    Westerman then told Ms. Bryson he would be placing her under arrest for driving under

the influence of drugs.

19.    He placed Ms. Bryson in his patrol car, and then got in Ms. Bryson's car and drove it to a

parking lot of a nearby business.

20.    Officer Westerman then moved his patrol car to the same parking lot.

21.    Officer Westerman then blocked Ms. Bryson's car in with his patrol car so she could not

leave.

22.     He then told Ms. Bryson to get into her car.

23.     Westerman leaned into the passenger compartment of Ms. Bryson's car and told her that if she 'flashed' him, or showed him her breasts, she may not go to jail.

24.     Officer Westerman continued to badger Ms. Bryson with threats of jail and substantial fines.

25.     Finally, Ms. Bryson gave in and exposed her breasts.

26.     Officer Westerman then reached into the care and fondled Ms. Bryson's breasts in a violent and degrading manner.

27.     After a few minutes, Officer Westerman told Ms. Bryson she could leave.

28.     As Ms. Bryson attempted to leave, Officer Westerman again told her to show him her breasts.

29.     Officer Westerman then reached into the vehicle and fondled Ms. Bryson's breasts a second time.

30.     Officer Westerman's second groping of Ms. Bryson's breasts was even more violent than the first.

31.     Once an investigation was begun, Officer Westerman denied any of this occurred.

32.     Officer Westerman insisted that the accident investigation was conducted in the center lane of the road and that, following the investigation, the drivers left without incident.

33.     Officer Westerman lied and stated that the vehicles were never moved as set forth above.

34.     Officer Westerman's initial account indicated that he simply returned to a police substation to sleep and read.

35.  However, according to dispatch logs, there is a 50 minute discrepancy in the times that Westerman had given to investigators.

36.  Additionally, security surveillance video for the parking lot of the business where he took Ms. Bryson contradicts Westerman's version of events.

37.  Further, the surveillance video corroborates the events as set forth above.

38.  Officer Westerman has subsequently admitted that Ms. Bryson "may have felt compelled to act because of my status as a police officer."

39.  Officer Westerman had a prior criminal history, including: Assault, Class B Misdemeanor; Criminal Mischief, Class C Misdemeanor; and, Possession of a Dangerous Weapon, Class B Misdemeanor.

40.  Westerman's search and seizure of Ms. Bryson was conducted in a threatening and abusive manner, during the course of which Westerman verbally assaulted, intimidated and abused Ms. Bryson with the intent of humiliating, embarrassing and degrading her for his own personal sexual gratification and pleasure.[1]

FIRST CAUSE OF ACTION
Illegal Search, Seizure and Detention

41.  Plaintiff incorporates by reference all above allegations.

42.  Prior to the events in this case, multiple authorities and precedent existed recognizing the rights of individuals to be free from search, seizure and detention.

---

[1]     Discovery in this case may reveal additional facts and evidence which provide further support for the claims of constitutional violations by Defendants. Plaintiff reserves the right further support her claims and allegations as additional facts and evidence are adduced through the discovery process.

43. Westerman's actions as set forth above demonstrate a clear and unequivocal violation of Ms. Bryson's constitutional rights to be free from illegal search, seizure and detention.

44. Westerman violated her Fourth Amendment rights to be free from unreasonable searches and seizures while she was being illegally detained in Westerman's custody inside his patrol car.

45. Westerman's conduct was an outrageous abuse of power and authority and a flagrant deprivation of Ms. Bryson's rights, privileges, and immunities secured to her by the Fourth Amendment to the Constitution of the United States, and her rights under the Utah Constitution as well.

46. Westerman's egregious misconduct directly and proximately caused Ms. Bryson to suffer extreme shock, severe emotional distress, humiliation, embarrassment, and instilled in her a significant and continuing fear of law enforcement officers. Ms. Bryson suffered flagrant violations of her constitutional rights by being detained as set forth above by Officer Westerman.

47. Ms. Bryson suffered further flagrant violations of her constitutional rights by being sexually abused, in violation of her constitutional rights to bodily integrity, by Officer Westerman in the course of his employment as a Police Officer and under the color of his official authority.

48. Defendant Westerman exhibited a shocking degree of disregard to the rights of privacy, bodily integrity, and the right to be free from unlawful and unreasonable searches and seizures.

49.   Existing remedies do not redress the violations of the rights of Ms. Bryson, primarily since the violations have already occurred, and the damage to Ms.'s rights has accrued.

50.   Equitable relief would be and is wholly inadequate to redress the injuries and damages to Ms. Bryson, primarily since the violations have already occurred, and the damage to Ms. Bryson's rights has accrued.

51.   As a direct and proximate result of Westerman's deliberate and violative actions, Ms. Bryson suffered embarrassment, emotional distress, humiliation, mortification, and fear by being forcibly and under duress required to expose herself to a male law enforcement officer while in his custody.

52.   Ms. Bryson seeks compensatory damages for these constitutional violations in an amount to be determined at trial.

53.   Ms. Bryson seeks punitive damages as may be allowed by law.

54.   The above-described violations of Ms. Bryson's rights are actionable under 42 U.S.C. § 1983, as well as state constitutional law and she is entitled to judgment against Westerman under that section for damages in an amount to be proven at trial.

55.   Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

56.   The above-described violations are further actionable under the Utah Constitutional provisions set forth supra.

57.   Westerman's actions, as set forth above, were intentional, wanton, deceptive, malicious, and oppressive, thus entitling Ms. Bryson to an award of punitive damages in an amount to be determined at trial.

SECOND CAUSE OF ACTION
Violation of Plaintiff's Substantive Due Process Right to Bodily Integrity

58.    Plaintiff incorporates by reference all above allegations.

59.    There is a well-established liberty interest in bodily integrity.

60.    Citizens hold a due process right to be free of unwelcome sexual fondling and touching or other egregious sexual contact by a police officer acting under color of law.

61.    Sexual misconduct by a state actor constitutes a violation of substantive due process rights to bodily integrity.

62.    Westerman, acting under color of law, and under his authority as a Provo City employee and Police Officer, illegally searched, without a warrant, reasonable suspicion, or probable cause, in violation of Ms. Bryson's Fourteenth Amendment substantive due process and State of Utah Constitutional rights to bodily integrity.

63.    By reason of Westerman's conduct, Ms. Bryson was deprived of the rights, privileges, and immunities secured to her by the Fourteenth Amendment to the Constitution of the United States, and was deprived of her rights under the Utah Constitution as well.

64.    Westerman's egregious misconduct directly and proximately caused Ms. Bryson to suffer extreme shock, severe emotional distress, humiliation, embarrassment, and instilled in her a significant and continuing fear of law enforcement officers.

65.    The above-described violations of Ms. Bryson's rights are actionable under 42 U.S.C. § 1983, and she is entitled to judgment against Westerman under that section for damages in an amount to be proven at trial.

66.    Plaintiff is entitled to attorney fees and costs pursuant to 42 U.S.C. § 1988.

THIRD CAUSE OF ACTION
Failure to Supervise and / or Train

67.   Plaintiff incorporates by reference all above allegations.

68.   Defendant Provo City and/or the Provo City Police Department, is a "person" for

purposes of a §1983 action. Provo City may therefore be sued directly for Police Chief

Craig Geslison's and/or the Provo City Police Department's unconstitutional policies,

customs, practices, or inadequate supervision that led to or acquiesced in the violation of

Ms. Bryson's constitutionally protected rights.

69.   The failure of Provo City to adequately supervise and/or have policies and practices in

place to protect a citizen's constitutional rights is actionable pursuant to 42 U.S.C. §1983.

70.   The failure of Provo City to adequately supervise and/or have policies and practices in

place to protect a citizen's constitutional rights is actionable at common law as a claim

premised in negligence.

71.   A 42 U.S.C. §1983 claim against Police Chief Craig Geslison in his official capacity is

essentially a claim against Provo City. Such claim may be asserted based on allegations

of negligence in hiring, retention, training, and/or supervising employees. Additionally,

failure to have a written policy, or to have a policy in place that is customarily not

followed, makes Provo City liable for the deprivation of Ms. Bryson's civil rights.

72.   At all times relevant to this Complaint, Officer Westerman, as an Officer of the Provo

City Police Department, was acting under the direction and control of that Office, which

acted through its managers, supervisors, agents, and employees who were responsible for

its deputies, its operations, and for making and upholding the policies of said Office.

73.  Based on information and belief, Provo City, through Police Chief Craig Geslison and its Provo City Police Department, failed to adequately supervise Officer Westerman, in deliberate indifference and reckless disregard for the welfare of the public at large, including Ms. Bryson.

74.  Based on information and belief, Provo City, Police Chief Craig Geslison, and the Provo City Police Department knew, or should have known, that the Provo City Police Department:

74.1.  lacked a systematic approach to training its employees about Professional Standards of Conduct and ethics;

74.2.  failed to facilitate communication within the department about those standards and supervisors;

74.3.  failed to train managers upon promotions related to their new roles;

74.4.  failed to ask questions pertaining to ethics and ethics challenges when hiring new officers;

74.5.  typically provided officers with only 30 minutes of ethics and professional standards of conduct during three years of continuous employment;

74.6.  failed to implement an effective complaint process resulting in an inefficient and inconsistent investigation process;

74.7.  failed to implement an effective background investigation process for new hires and failed to include a polygraph examination for new hires;

74.8.  provided supervisors, officers and employees with training that was sporadic and inconsistent; and,

11

74.9.  failed to provide adequate funding in order to provide the necessary training.

75.    Based on information and belief, Provo City, through Police Chief Craig Geslison and its Provo City Police Department, repeatedly and knowingly failed to appropriately document complaints, thereby depriving the department and city of the ability to identify officers who were or might become hazards to the community.

76.    Based on information and belief, Provo City, through Police Chief Craig Geslison and its Provo City Police Department, repeatedly and knowingly failed to discipline, reassign, terminate, and/or supervise its deputies with respect to violations of the laws of the State of Utah, the United States Constitution, and/or its own policies. Such failure created a pattern, policy, practice, custom, and/or atmosphere where such illegal and unconstitutional behavior is tolerated, condoned, and accepted by Police Chief Craig Geslison, the Provo City Police Department, and the City, in deliberate indifference and reckless disregard for the public at large, including Ms. Bryson.

77.    Provo City, through Police Chief Craig Geslison and its Provo City Police Department, failed to adequately investigate and screen officers prior to employment in deliberate indifference and reckless disregard for the public at large, including Ms. Bryson.

78.    Provo City, through Police Chief Craig Geslison and its Provo City Police Department, failed to adequately monitor and evaluate the performance of its officers and their conduct, particularly of Westerman, in deliberate indifference and reckless disregard for the public at large, including Ms. Bryson.

79.    Provo City, through Police Chief Craig Geslison and its Provo City Police Department, could have and should have instituted a training program for its officers and employees

and instructed them about the impropriety and illegality of sexual harassment or other misconduct against citizens during traffic stops or other citizen encounters.

80.     Furthermore, Provo City, through Police Chief Craig Geslison and its Provo City Police Department, failed to have a written policy specifying and admonishing its officers against sexual harassment and sexual misconduct, or had such a written policy that, according to custom and practice, was not customarily followed.

81.     By not instituting such a training program, and/or by not having a written policy, and/or by failing to enforce such policy, and/or by failing to properly and adequately supervise its deputies, Provo City, through Police Chief Craig Geslison and its Provo City Police Department, showed reckless disregard and deliberate indifference for the rights, and were negligent in securing the welfare of the public at large, including Ms. Bryson.

82.     The violations of Ms. Bryson's rights are actionable under 42 U.S.C. § 1983, the Utah Constitution and Ms. Bryson is entitled to judgment and damages against Provo City, Police Chief Craig Geslison, and its Provo City Police Department, said judgment to include punitive damages, due to the actions, or inactions, by Police Chief Craig Geslison and the Provo City Provo City Police Department, in an amount to be proved at trial, plus costs and attorneys fees pursuant to 42 U.S.C. § 1988.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as

follows:

1. For general compensatory damages in an amount to be

13

determined at trial;

2. For special damages as are shown at trial;

3. For punitive damages against the named individuals and/or Doe Defendants as may be

allowed by law;

4. For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by

law;

5. For Plaintiff's costs and reasonable attorney fees, pursuant to 42 U.S.C. 1988; and

6. For such other and further relief as the Court deems just and proper.


DATED this: March 30, 2012

_____
Peter W. Summerill
Attorney for Plaintiff