IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LESLIE BRYSON<br><br>    Plaintiff,<br><br>vs.<br><br>JEFFREY WESTERMAN, a Provo City Police Officer, CRAIG GESLISON, former Chief of Police for Provo City; PROVO CITY and PROVO CITY POLICE DEPARTMENT; and, JOHN or JANE DOES 1-10.<br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:12-cv-313<br><br>Judge Dee Benson |

Plaintiff Leslie Bryson brought this suit under 42 U.S.C. § 1983 alleging that defendants violated her rights under the Fourth and Fourteenth Amendments to the United States Constitution.[1] Defendants Provo City, Provo City Police Department, and former Chief of Provo Police Craig Geslison have moved the court to dismiss all claims against them. (Dkt. No. 28). On April 29, 2014, the court heard oral argument on the motion. Plaintiff was represented by Peter Summerhill and defendants were represented by Gary Millward. Having considered the parties' briefs, orgal argument, and the relevant law, the court enters the following Memorandum Decision and Order.

---

[1] Plaintiff has conceded her negligence claim. See Pl.'s Opp'n Mem., 4.

## BACKGROUND

On July 23, 2010, plaintiff Bryson was involved in a traffic accident in Provo City, Utah. Provo dispatched police officer Jeffrey Westerman to the scene. After completing his investigation of the collision, Westerman directed the other driver to leave the premises and required Bryson to undergo field sobriety tests. Westerman then told Bryson he was going to arrest her for driving under the influence of drugs. After initially placing her in his patrol car, he drove her car to the parking lot of a nearby business and then parked his own car in the same lot in a way that blocked any view from the street. In the parking lot, Westerman again threatened Bryson with arrest, but stated he might let her go if she exposed her breasts. Over the course of forty to ninety minutes, Westerman interrogated Bryson and fondled her breasts twice. He then released her from custody.

Bryson subsequently reported the incident to the Utah County Sheriff's Department and Westerman was arrested for forcible sexual abuse. After first denying the allegation, Westerman later pled guilty when he learned there was surveillance video of the encounter. The Provo City Police Department then terminated Westerman's employment and the Utah Peace Officer Standards and Training Commission revoked his law enforcement certification.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206,

1215 (10th Cir. 2013) (internal quotation marks omitted). The material facts of this case are not in dispute and judgment as a matter of law is therefore appropriate.

Relevant to this motion, Bryson is suing defendants under 42 U.S.C. § 1983 alleging the violation of her rights under the United States Constitution. In her complaint, she alleges that defendants inadequately hired, trained, and supervised Westerman, making them liable for the crime that Westerman committed against her.

Below, the court will first address the standards for municipal liability under Section 1983 and then analyze each claim as they apply to defendants.

## I.  MUNICIPAL LIABILITY

To show liability for a municipality under 42 U.S.C. § 1983, a plaintiff must show (1) a constitutionally defective policy or custom, (2) that the policy or custom "directly caused" and was the "moving force" behind an underlying constitutional violation that caused the constitutional harm, and (3) that the final policymaker who implemented the policy or custom acted with "deliberate indifference" to the constitutional rights of the plaintiff. See generally, Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397 (1997).

### a. Official Policy or Custom

The first element for municipal liability requires that the dispute relate to a municipality's official policy or custom as opposed to actions more appropriately attributable to its employees. Regarding this distinction, the Supreme Court has noted that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (U.S. 1978). In other words, the "official policy" requirement distinguishes between acts of the municipality and acts of its employees so as to make it "clear that municipal liability is limited to action for

3

which the municipality is actually responsible." Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1982). A practice will be considered an official policy or custom when it is a "formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." See Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 770 (10th Cir. 2013).

b. **Causation**

Next, to establish the causation element, the challenged policy or practice must be "closely related to the violation of the plaintiff's federally protected right." Id. This requirement is satisfied if the plaintiff shows that "the municipality was the 'moving force' behind the injury alleged." Bd. of Cnty Comm'rs, 520 U.S. at 404. Plaintiffs must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." This causation element "is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." Schneider, 717 F.3d at 770.

c. **State of Mind**

Finally, "a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." Bd. of Cnty Comm'rs, 520 U.S. at 407.

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of

4

unconstitutional behavior if a violation of federal rights is a highly predictable or *plainly obvious consequence* of a municipality's action or inaction[.]

Barney, 143 F.3d at 1307 (citations and internal quotations omitted) (emphasis added).

## II. BRYSON'S CLAIMS

Bryson alleges inadequacies in the hiring and retention, training, and supervision of Westerman. The court addresses each of these claims below.

### a. Hiring and Retention

Bryson asserts that, given Westerman's history, he was unsuitable to be hired or retained as a police officer. She supports this claim with evidence of Westerman's juvenile record, three traffic accidents caused by Westerman while on duty, and some unsatisfactory scores on performance evaluations.

Bryson's claim fails under the "deliberate indifference" element of municipal liability, however. Specific to the decision to hire and retain, "only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" Schneider, 717 F. 3d at 760. Here, the sexual crime Westerman committed was not the "plainly obvious consequence" of the decision to hire and retain him. Despite his juvenile history and any disciplinary problems during his time as a Provo police officer, a background investigation revealed no evidence of prior sexual indiscretion and nothing in Westerman's past would indicate a propensity to commit such acts.[2]

---

[2] See Undisputed Fact No. 31: "Prior to Westerman's hiring, he underwent a suitability assessment conducted by a clinical professional. Among other conclusions, that document addresses Westerman's juvenile entanglements with the law, and says that with respect to hostility and anger modulation, Westerman 'does not reveal underlying resentment and does not

5

Accordingly, Westerman's crime was not the "plainly obvious consequence" of the decision to hire and retain him.

**b. Training**

In support of her failure to train claim, Bryson has not identified a specific policy or custom that is in itself unconstitutional, but instead alleges a failure in both the type and amount of training that Provo gives its officers. As the Tenth Circuit in Schneider noted, "[t]he causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring." Id. In other words, where, as here, Bryson has not identified an unconstitutional policy or custom, she bears a heightened burden to demonstrate a direct causal link between the disputed action and the deprivation of federal rights. See Bd. of Cnty. Comm'rs, 520 U.S. 404. In this case, "specific or extensive training hardly seems necessary for [defendant] to know that sexually assaulting [plaintiff] . . . is inappropriate behavior." Barney v. Pulsipher, 143 F.3d 1299, 1308 (10th Cir. 1998). Even accepting as true all the alleged inadequacies in the way Provo City trains its officers, Bryson cannot demonstrate how such training "set in motion a series of events that the defendant[s] knew or reasonably should have known would cause [Westerman] to deprive [Bryson] of her constitutional rights," specifically, her substantive due process right to bodily integrity. See Dodds, 614 F.3d at 1185.

---

show anger modulation problems. He is a low risk in this area.' With respect to antisocial traits, the assessment characterizes Westerman as having 'had some acting-out in his youth. He is not showing current antisocial traits or characteristics nor does he show potential for substance abuse. He is a low risk in this area.' Further, in response to a self-control question, the assessment indicates that Westerman 'is responsible, reliable, and socialized to the rules of society. He is not showing a high potential for impulsivity. He is a low risk in this area.' Also, the assessment concludes with the statement, '[i]t is recommended this man be hired.'"

6

Accordingly, the court finds that plaintiff cannot meet the heightened burden with respect to causation and her failure to train claim fails.

    **c. Supervision**

Bryson's supervision claim fails for similar reasons as do her other claims. As a preliminary matter, Bryson can point to no policy Chief Geslison promulgated, implemented, or was responsible for that led to Westerman's deplorable conduct.[3] In fact, Bryson concedes that Provo City expressly prohibits such conduct. See Mem. in Supp., Facts #1-4, 13-15. Accordingly, Bryson necessarily must identify evidence of a Police Department custom, through Chief Geslison, which allowed or condoned the violation of the constitutional right to bodily integrity through forcible sexual abuse. As with her other claims, even if Bryson could demonstrate sufficient evidence of such a custom, she cannot demonstrate either the requisite causal connection or culpable state of mind. More specifically, she cannot show how defendants' method of supervision was the 'moving force' behind Westerman's deplorable crime or how such supervision presented either Chief Geslison or the City with evidence of an "obvious risk of constitutional harm which [would] almost inevitably result in the constitutional injury of the type experienced by plaintiff." Hollingsworth v. Hill, 110 F. 3d 733, 745 (10th Cir. 1997).

---

[3] Bryson also relies on alleged evidence of an incident where Chief Geslison removed his son from a crime scene. See Opp'n Mem., 21. Even when viewing this fact in the light most favorable to Bryson, her claim fails for the reasons discussed above.

## CONCLUSION

The court is sympathetic to Ms. Bryson's unfortunate experience and acknowledges that she was the victim of a crime. However, based on the foregoing discussion, the court cannot find among her legal claims any that would qualify to proceed to a trial. Accordingly, defendants' motion for summary judgment is hereby GRANTED.

DATED this 29th day of August, 2014.

*/s/ Dee Benson*

_____
Dee Benson
United States District Judge